UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| David Eugene Gregg, Sr., #296199, | ) | C/A No. 4:08-3423-GRA-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, David Eugene Gregg, Sr., ("Petitioner/Gregg"), a *pro se* prisoner, seeks habeas relief pursuant to 28 U.S.C. §2254. This matter is before the Court on the Respondent's motion for summary judgment (document # 19).[1]

The Petitioner filed this petition for a writ of habeas corpus on October 10, 2008. On March 20, 2009, the Respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an Order filed March 23, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition.

## I. PROCEDURAL HISTORY

The procedural history as set out by the Respondent has not been seriously disputed by the

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

Petitioner other than the issues presented. Therefore, the undisputed procedural history as stated by the Respondent is set forth herein.

Petitioner is presently confined at Perry Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Spartanburg Grand Jury for Trafficking in Cocaine, (200-400 grams) (02-GS-42-423) and Possession of a Firearm During the Commission of a Violent Crime (02-GS-42-2423). Petitioner was represented by Andrew Johnston, Esquire and Gerald Wilson, Esquire. Petitioner proceeded to trial and was found guilty by a Spartanburg County jury of the indicted offenses on September 11, 2003. The Honorable J. Derham Cole, the trial judge, sentenced Petitioner to confinement for a period of twenty-five (25) years for Trafficking in Cocaine and five (5) years for the Possession of a Firearm During the Commission of a Violent Crime. Those sentences were to be served concurrently. After Petitioner was convicted and sentenced, the State dismissed the remainder of the charges against him.

A timely notice of appeal was filed on Petitioner's behalf. Petitioner directly appealed his trial convictions to the South Carolina Court of Appeals. Eleanor Duffy Cleary, Esquire, of the Office of Appellant Defense filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Based on the record, Petitioner did not file a *pro se* response to the Anders brief. In the Anders brief, Ms. Cleary raised only one issue:

> Did the trial court lack subject matter jurisdiction to try appellant because his indictment was insufficient?

(See Anders brief, page 3). The South Carolina Court of Appeals dismissed the appeal in an unpublished opinion. State v. Gregg, 05-UP-443, on July 14, 2005. The Remittitur was issued on August 3, 2005.

Petitioner filed an application for post-conviction relief (05-CP-42-2319) on July 29, 2005,

and an amended application approximately two months after the issuing of the Remittitur on September 27, 2005. At the PCR hearing, the allegations that the Petitioner was asserting were announced to the PCR Court as follows:

I.   Ineffective Assistance of Counsel:

1.   Failed to object to faulty chain of custody;

2.   Failed to do motions to suppress evidence;

3.   Failed to object to the introduction of a State's witness presented to a Grand Jury;

4.   Waived applicant's preliminary hearing without his consent;

5.   Failed to object to the introduction of an SKS assault rifle which was prejudicial and unconnected to his conviction;

6.   Failed to object to the credibility of a witness through impeachment;

7.   Failed to bring to Court's attention a conflict of interest that counsel had regarding two other alleged co-defendants. One was a co-defendant and one I believe was not actually after finding out some more information. There was a conflict there and that the trial counsel failed to bring that to the Court's attention and address that issue;

II.   Prosecutorial misconduct at trial.

(Tr. 320).

Respondent made its Return on May 5, 2006. An evidentiary hearing into the matter was convened on September 21, 2006, at the Spartanburg County Courthouse before the Honorable Doyet Early, III., Circuit Court Judge (the PCR Court). Petitioner was present at the hearing and was represented by Michael Sarratt, Esquire. Respondent was represented by S. Prentiss Counts, Esquire, of the South Carolina Attorney General's Office.

At the hearing, Petitioner testified on his own behalf. Also testifying at the hearing were Andrew J. Johnston, Esquire and Jessica Thill, Esquire, one of the Solicitors who prosecuted the case against Petitioner. The PCR Court also had before it a copy of the transcript of the proceedings against Petitioner, the records of the Spartanburg County Clerk of Court, the appellate records of Petitioner, and Petitioner's records from the South Carolina Department of Corrections. On June 26, 2007, the PCR Court issued its Order of Dismissal denying Petitioner's application for postconviction relief. The Order was filed with the Clerk of Court for Spartanburg County on July 11, 2007.

Petitioner appealed the denial of his post-conviction relief application to the South Carolina Supreme Court by way of a Petition for Certiorari. Petitioner raised only one issue on appeal from the denial of post-conviction relief:

1. Did the judge err in refusing to find counsel ineffective when his representation of *a codefendant* [*Wendy Sue Owens*]created a conflict of interest precluding counsel from a possible defense?

(See Petition for Certiorari pp. 2 & 4).

Respondent filed a Return to the Petition for Certiorari. On August 7, 2008, in a letter opinion, the South Carolina Supreme Court denied the Petition for Writ of Certiorari. The Remittitur was issued on August 25, 2008. This habeas petition followed.

## II. HABEAS ALLEGATIONS

Petitioner filed his petition on October 10, 2008, in which Petitioner raises the following allegations, quoted verbatim:

Ground One:          INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (SEE ATTACHED)

Supporting Facts:       FAILING TO IMPEACH STATE'S WITNESS;

                        FAILING TO CURE A CONFLICT OF INTEREST:

                        FAILING TO OBJECT TO SEARCH WARRANT:

                        FAILING TO OBJECT TO CHAIN OF CUSTODY:

                        FAILING TO OBJECT TO SOLICITOR'S CLOSING REMARKS:

                        FAILING TO BRING OUT LACK OF "PROBABLE CAUSE":

Ground Two:             PROSECUTORIAL MISCONDUCT: SEE ATTACHED

Supporting Facts:       BREAKING PRETRIAL MOTIONS: SEE ATTACHED

                        SOLICITOR'S CLOSING REMARKS

(Petition).


## III.  SUMMARY JUDGMENT

As stated above, on March 20, 2009, the Respondent filed a return and memorandum of law in support of their motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the Petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting* Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).


## V.  DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas Petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a Petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a Petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the Petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if Petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

<u>2.Procedural bypass</u>

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a Petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4.  Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a Petitioner must show

sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a Petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the Petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

# VI. ANALYSIS

The Respondent contends that the issues raised in this habeas petition, with the exception of the issue concerning the ineffective assistance of counsel due to a conflict of interest for representation of a co-defendant under Ground One, are procedurally barred from review and are without merit. Specifically, Respondent argues that Petitioner failed to present any of the other grounds in his PCR appeal or on direct appeal. Respondent further asserts that the record shows no discernable cause to excuse the default, nor had Petitioner argued any, and a claim of actual innocence would not be credible on this record.

The court agrees with Respondent that the only issue raised in the Petition for Writ of Certiorari in the Supreme Court of South Carolina was the issue of "Did the judge err in refusing to find counsel ineffective when his representation of a co-defendant created a conflict of interest precluding counsel from exploring a possible defense?" (Petition for Writ of Certiorari of PCR dismissal). The remaining issues under Ground One with respect to ineffective assistance of counsel were not raised in the PCR appeal. Therefore, the remaining issues under Ground One, with the exception of the conflict of interest argument, are procedurally defaulted. Petitioner's Ground Two with respect to prosecutorial misconduct was not raised in direct appeal[2] or in the Petitioner for writ of certiorari so that this issue is also procedurally defaulted.

As to the procedural default, the Petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the

---

[2] The only issue raised in the <u>Anders</u> brief on direct appeal was "Did the trial court lack subject matter jurisdiction to try appellant because his indictment was insufficient." <u>See</u> <u>Anders</u> Brief, p.3.

claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, it is procedurally barred from consideration by this Court and should be dismissed. Id.; *see* 28 U.S.C. 2254; Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) [In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.]; Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing *Murray v. Carrier,* 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla.1995).

Therefore, it is recommended that the Respondent's motion for summary judgment be granted with regard to Ground One and Ground Two with the exception of the issue pertaining to ineffective assistance of counsel for a conflict of interests due to his representation of a co-defendant which will be discussed below.

Under Ground One, Petitioner asserts counsel was ineffective when his representation of a co-defendant created a conflict of interest precluding counsel from exploring a possible defense. In his federal habeas petition, Petitioner asserts as follows:

> Attorney did represent both petitioner and Wendy Sue Owens trans page 356 l. 15-17, the State did tell Petitioner he or Owens would do the time. All others who were charged in this case had there[sic] charge droped[sic] a year and a half before petitioner was tryed[sic]. Ownes was the only one whos[sic] charges were held till

after t petitioner trial. This shows the State did mean to try Owens had Petitioner not been convicted.

(Petition, attachment p.1).

The Sixth Amendment guarantees an accused the right to effective assistance of counsel, see Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and an essential aspect of this right is a lawyer "unhindered by conflicts of interest. Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir.2001) (en banc), aff'd, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); see als o Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The mere fact of joint representation does not per se establish the denial of effective assistance of counsel. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The substance of a conflict of interest claim is analyzed by determining whether there was "an actual conflict of interest [that] adversely affected his attorney's performance." Jackson v. State, 329 S.C. 345, 495 S.E.2d 768, 773 (S.C.1998); Mickens, 535 U.S. at 166, 171-74. See also Cuyler, 446 U.S. at 348. This standard is different than the standard applied to a claim for ineffective assistance of counsel. In order to show ineffective assistance of counsel, a claimant generally must demonstrate that his lawyer afforded him defective representation and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, when counsel is burdened by an actual conflict of interest, he "breaches the duty of loyalty, perhaps the most basic of counsel's duties." Id. at 692. In this situation, a defendant need not show prejudice due to the inherent seriousness of the breach and the difficulty in "measur[ing] the precise effect on the defense of representation corrupted by conflicting interests." Id. Rather, "[p]rejudice is presumed ... if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's

performance.' " Id. at 692 (quoting Cuyler, 446 U.S. at 348) (internal quotations omitted).

With regard to this issue, the Fourth Circuit in Ivey v. Ozmint, 2008 WL 5262308 (4th Cir. Dec. 17, 2008), stated the following:

> We have recognized that, as a general proposition, the effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation. When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in Cuyler v. Sullivan, [446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ], instead of that articulated in Strickland. To establish that a conflict of interest resulted in ineffective assistance, more than a mere possibility of a conflict must be shown. The petitioner must show (1) that his lawyer was under an actual conflict of interest and (2) that this conflict adversely affected his lawyer's performance. If the petitioner can show an actual conflict, and that it adversely affected his lawyer's performance, prejudice is presumed and there is no need to demonstrate a reasonable probability that, but for the lawyer's conflict of interest, the trial or sentencing outcome would have been different. [A]n adverse effect is not presumed from the existence of an actual conflict of interest. United States v. Nicholson, 475 F.3d 241, 248-249 (4th Cir.2007) (internal quotation marks, alterations, and citations omitted).

> "The question whether a conflict of interest impermissibly tainted an attorney's performance is a mixed question of law and fact ... that calls for 'the application of legal principles to the historical facts of [a given] case.' " Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir.1998) (quoting Cuyler, 446 U.S. at 342, 100 S.Ct. 1708). Nevertheless, the state habeas court's findings of those historical facts are entitled to the statutory presumption of correctness, Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir.1999). . .

Ivey v. Ozmint, supra..

Petitioner has to overcome the state court's determination of the findings by clear and convincing evidence. Petitioner  has only made bald and conclusory allegations of a conflict of interest by representing both Petitioner and Wendy Owens.

At the PCR hearing, trial counsel, Mr. Johnston, testified that he did represent co-defendant Wendy Owens. He testified that "But she was, as far as I know, the State never intimated, said that

she was involved in the distribution, the hand-to-hand distribution between Mr. Gregg and the former Mrs. Gregg." (Tr. 356). Trial counsel further testified that Wendy Owens was on the premises, had a small bag of powder cocaine in her pocketbook, and she was charged with trafficking along with four or five other people that happened to be at this place of business. Counsel testified that "[s]o, in my opinion, while she was a codefendant, they were not–there was no conflict of interest between Wendy Owens and David Gregg." (Tr. 357). When questioned if he really felt it was in Petitioner's best interest to continue representation of him and Mr. Owens at the same time, trial counsel Johnston testified that "Ms. Owens didn't have anything to do with–his defense at trial was not Ms. Owens is the one who really sold the drugs. I mean there was not even a hint of that." (Tr. 361).

A review of the Order of Dismissal reveals that PCR court found with respect of whether there was a conflict of interest in representing both Petitioner and Ms. Owens as follows:

> Mr. Johnston testified that he did represent Wendy Owens. He stated that after the successful drug buy by the confidential informant, law enforcement entered the premises that included three (3) buildings on a large area of land. A small amount of cocaine was found in Mrs. Owens' pocketbook and she was charged with simple possession of cocaine. The PCR Court stated Mr. Johnston testified that her charges were completely separate and exclusive from Petitioner's charges and there was no connection between the two cases.

(Tr. 387).

The PCR court summarized Solicitor Thill's testimony as follows:

> Ms. Thill testified that she did not see a relevant connection between Wendy Owens and the Applicant's cases. She stated that Ms. Owens and multiple other persons were arrested that day. Ms. Thill testified that Ms. Owens was not located near the Applicant and had no connection to the confidential informant and her buy. Law enforcement found .82 grams of cocaine in Ms. Owens pocketbook and all charges were later dropped.

(Tr. 388-389).

The PCR set out the applicable law with regard to a conflict of interest as follows:

> The mere possibility of a conflict of interest is insufficient to challenge a criminal conviction. <u>Jackson v. State</u>, 329 S.C. 345, 426 S.E.2d 793 (1998). A potential conflict of interest that doesn't ripen into an actual conflict is not sufficient to impugn a conviction. <u>Id</u>. In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. <u>Duncan v. State</u>, 281 S.C. 435, 438 315 S.E.2d 809 (1984). The Applicant must show that his attorney actually owed duties to a party whose interests were adverse to the Applicant. <u>Id</u>.

(Tr. 391).

The PCR concluded that:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).

(Tr. 391-392).

The PCR court's findings and conclusion with respect to the conflict issues is as follows:

> The Applicant's allegation that trial counsel was ineffective for failing to cure the conflict of interest is without merit. The Court finds the Applicant's testimony to be not credible and Mr. Johnston and Ms. Thill's testimony to be credible regarding this issue. Wendy Owens' charges were unrelated and did not materialize as a conflict. . . . The Applicant did not bear his burden to prove prejudice in any of his allegations of conflict of interest and did not show how such representation adversely affected trial counsel's performance. The Court finds that trial counsel was not ineffective for failing to cure the alleged conflict of interest. This allegation is denied and dismissed.

18

(Tr. 393).

The record supports the findings and conclusions of the PCR court. The record does not support Petitioner's allegation that trial counsel had an actual conflict of interest that adversely affected his performance with regard to his representation of Wendy Owens. Petitioner has not identified a plausible alternative strategy or tactic that his defense counsel might have pursued or that the alternative strategy or tactic was objectively reasonable under the facts of the case now known to the attorney at the time of the attorney's tactical decision.[3] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. The PCR court found trial counsel's testimony to be credible. Petitioner has not rebutted this presumption by setting forth clear and convincing evidence. Further, Petitioner has not presented any evidence that established that defense counsel's failure to pursue a different

---

[3] The defense strategy was to assert that the confidential informant, Petitioner's ex-wife, had motive to want Petitioner arrested. Therefore, counsel testified at the PCR hearing as follows:

> . . . the strategy that, that we had, the only one that I would come up in this situation because of the very damaging telephone conversations between Mr. Gregg and Mrs. Gregg discussing the purchase of all of these drugs, which were tape recorded, the only thing I could come up with was that she had sold it to her. And the way that I did that was by showing that the, perhaps the police didn't thoroughly search her like they should have, and I think I did a pretty good job of that, and by showing that she had a motive to try and get after Mr. Gregg (as his ex-wife)..

> . . .

> Well, it (defense) was the only one I had available because of the telephone conversations between them (Mr. Gregg and the confidential informant, the ex-wife).

(Tr. 359).

strategy or tactic was linked to an actual conflict. <u>Mickens v. Taylor</u>, 240 F.3d a348, 361 (4th Cir. 2001). The PCR court's findings of facts are entitled to the statutory presumption of correctness. Therefore, the undersigned does not find that the PCR court's determination of the facts is contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings.

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Cuyler</u> and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); <u>Williams, supra</u>. Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted on this issue.

## VII. CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (docket entry #19) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

It is Further Recommended that any outstanding motions be deemed MOOT.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February <u>5</u>, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**